# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM S32423

———————————

### UNITED STATES
*Appellee*

**v.**

### Sonia E. MOORE
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 December 2017

———————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to grade of E-1. Sentence adjudged 23 May 2016 by SpCM convened at Pope Army Airfield, North Carolina.

*For Appellant:* Major Melissa Biedermann, USAF; Captain Patricia Encarnación Miranda, USAF.

*For Appellee:* Major Cara J. Condit, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Judge HUYGEN delivered the opinion of the court, in which Senior Judge HARDING and Judge SPERANZA joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

HUYGEN, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with her pleas, of one specification of false official statement, four

specifications of wrongful use of oxycodone, and two specifications of wrongful use of hydrocodone, in violation of Articles 107 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 912a. Appellant was acquitted of one specification of failure to obey an order, in violation of Article 92, UCMJ, 10 U.S.C. § 892. Appellant pleaded not guilty to one specification of wrongful use of oxymorphone, which was later withdrawn and dismissed pursuant to a pretrial agreement (PTA). The military judge sentenced Appellant to a bad-conduct discharge, confinement for four months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

On appeal, Appellant asserts that she was denied meaningful opportunity for clemency when the staff judge advocate's recommendation (SJAR) misstated the evidence on which her conviction was based. We find a colorable showing of possible prejudice but not on the basis cited by Appellant. Instead, we find plain error attributable to the addendum to the SJAR. Specifically, the addendum to the SJAR failed to account for the terms of the PTA and failed to correct the clemency submission's misstatement of the convening authority's options under Article 60, UCMJ, 10 U.S.C. § 860. As a result, we remand and order new post-trial processing.

## I. BACKGROUND

Appellant was ordered to provide a urine sample as part of a squadron inspection on 9 December 2015. The sample tested positive for oxycodone and oxymorphone. Oxycodone is a prescription pain medication sold under many names, including Percocet. When oxycodone (the drug) is ingested and absorbed, it breaks down into several metabolites that can then be present in urine, including both oxycodone (the metabolite) and oxymorphone. On 8 January 2016, an Air Force Office of Special Investigations (AFOSI) agent interviewed Appellant, who stated that, several days after providing the urine sample, she realized that she had accidentally taken her husband's medication, which looked like medication she had been dispensed. When interviewed, Appellant's husband stated that he had been prescribed Percocet.

Also on 8 January 2016, Appellant was ordered and provided a urine sample for a "Bickel test."[1] The sample tested positive for hydrocodone, hydromorphone, oxycodone, and oxymorphone. Like oxycodone, hydrocodone is a prescription pain medication sold under many names. When hydrocodone

---

[1] *United States v. Bickel*, 30 M.J. 277, 282, 288 (C.M.A. 1990) (holding that the testing of servicemembers' urine for drugs pursuant to an inspection is constitutionally valid and that a later test is a continuation of the original inspection).

(the drug) is ingested and absorbed, it breaks down into several metabolites that can then be present in urine, including both hydrocodone (the metabolite) and hydromorphone. On 29 January 2016, a subsequent "Bickel test" returned a positive result for oxycodone and oxymorphone in Appellant's urine. On 17 February 2016, a third "Bickel test" returned a positive result for hydrocodone, hydromorphone, and oxymorphone in Appellant's urine.

Appellant and the special court-martial convening authority entered into a PTA in which Appellant agreed, *inter alia*, to enter into a stipulation of fact regarding the charges and specifications to which she would plead guilty and to plead guilty to charges and specifications concerning Articles 107 and 112a, UCMJ. In exchange, the convening authority agreed to withdraw and dismiss one specification of wrongful use of oxymorphone after the military judge accepted Appellant's guilty plea on the other Article 112a specifications. Also, the convening authority agreed to approve no confinement in excess of 60 days if a bad-conduct discharge was adjudged.

At trial, the military judge reviewed the stipulation of fact admitted as Prosecution Exhibit 1 with Appellant and accepted Appellant's plea of guilty on one specification of false official statement, four specifications of wrongful use of oxycodone, and two specifications of wrongful use of hydrocodone. The Prosecution called three witnesses—Appellant's first sergeant, the observer for Appellant's 17 February 2016 urine sample, and the drug testing program administrative manager for the drug demand reduction program at Pope Army Airfield—to testify on the specification of failure to obey an order, specifically, the 17 February 2016 order for Appellant to provide a urine sample. The military judge ultimately acquitted Appellant of the specification of failure to obey an order.

The confinement order, dated 23 May 2016, the day of trial, accurately described the adjudged sentence, including confinement for four months, and indicated Appellant's receipt for confinement at Hoke County Detention Center in Raeford, North Carolina.[2] It did not mention the PTA terms.

The SJAR, dated 27 July 2016, stated in paragraph 2, "The primary evidence against the accused consisted of a plea of guilty, a stipulation of fact, and testimony by Air Force Drug Testing Lab personnel and the accused's first sergeant." Paragraph 4 of the SJAR accurately described the adjudged sentence. Paragraph 5 accurately described the PTA and continued,

---

[2] A full four-month confinement that began on 23 May would end on 19 September; a 60-day confinement would end on 21 July.

> In accordance with the pretrial agreement, I recommend you only approve so much of the sentence as calls for 60 days confinement, reduction to E-1, and a bad conduct discharge. You do not have the authority to disapprove, commute, or suspend in whole or in part the punitive discharge. You do have the authority to disapprove, commute, or suspend in whole or in part the reduction in grade and the confinement.

Attached to the SJAR, the Report of Result of Trial accurately described the adjudged sentence and the conditions of the PTA except the omission of "approve" before "no confinement in excess of."

On 8 August 2016, Appellant requested clemency and asked specifically that the convening authority "reconsider" the bad-conduct discharge. In the request, Appellant referred to serving confinement at the "Hoke County Jail" and described what she had done since "getting out of confinement."

Appellant's clemency request was attached to a memorandum from trial defense counsel, also dated 8 August 2016. The memo referred to the adjudged confinement as "4 months confinement (reduced to 2 months by virtue of a Pre-Trial Agreement)" and stated, "[Appellant] has served her term of confinement at the Hoke County Correctional Facility, and is awaiting being placed on Excess and Appellate leave . . ." Trial defense counsel wrote,

> [D]ue to the current state of the law, you only have the authority to reduce the reduction in rank . . . Specifically, in this case, you could only reduce the reduction in rank . . . AB Moore requests her BCD be disapproved, by whomever might eventually have the authority to do so.

On 11 August 2016, the SJA signed the addendum to the SJAR and attached Appellant's clemency request. Paragraph 2 of the addendum, in its entirety, read as follows:

> I reviewed the attached clemency matters submitted by the defense. My earlier recommendation remains unchanged. I recommend that you approve the findings and sentence as adjudged, and except for the Bad Conduct Discharge, order the sentence executed.

Although the SJAR was attached to the addendum, the addendum itself neither mentioned the PTA nor repeated the convening authority's clemency options to affect the reduction in grade and confinement but not the bad-conduct discharge.

The convening authority's action, dated 11 August 2016, stated, in part, "the sentence is approved and, except for the bad conduct discharge, will be

executed. The term of confinement having been served, no place of confinement is designated."

## II. DISCUSSION

Appellant asserts a very specific error that the SJAR misstated the evidence on which her conviction was based. The Government concedes that there was no witness testimony used to prove the specifications of which Appellant was convicted and that there was no witness testimony from "Air Force Drug Testing Lab personnel." Article 60(e), UCMJ, requires an SJAR for a special court-martial that includes a bad-conduct discharge. Rule for Courts-Martial (R.C.M.) 1106(d)(3) sets out the required contents of an SJAR but does not include a description of the evidence used to convict. Instead, the SJAR sentence at issue was modeled on the SJAR template found at Figure 9.17 of Air Force Instruction 51-201 (30 Jul. 2015). To comply with R.C.M. 1106, the SJAR need not have included the sentence that begins "The primary evidence against the accused" but, once included, it needed to be accurate. It was not. Appellant raises the issue on appeal but did not do so during the period to submit matters under R.C.M. 1105 or 1106(f). While we find the sentence in the SJAR constituted obvious error, Appellant did not make a colorable showing of possible prejudice affecting her opportunity for clemency with respect to this error. Although the threshold is low, Appellant did not cross it for this very specific error.

The proper completion of post-trial processing is a question of law the court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Failure to comment in a timely manner on matters in the SJAR or matters attached to the SJAR waives in the absence of plain error, or forfeits, any later claim of error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). Analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). "To meet this burden in the context of a post-trial recommendation error . . . an appellant must make 'some colorable showing of possible prejudice.'" *Id*. at 436–37 (quoting *Kho*, 54 M.J. at 65). "The threshold is low, but there must be some colorable showing of possible prejudice . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *Id*. at 437. Here, we find plain error attributable to the addendum to the SJAR on two bases.

First, the failure of the addendum to the SJAR to account for the terms of the PTA is plain error necessitating new post-trial processing. The addendum's failure was reflected in the convening authority's action. By approving the sentence as adjudged, the convening authority seemingly failed to fulfill a

term of the PTA and thus may have deprived Appellant of the most significant benefit of the PTA—the 60-day cap on confinement when four months of confinement was adjudged. This error merits more than the footnote that appears in Appellant's brief; it is the heart of Appellant's case. Furthermore, it is an error that requires new post-trial processing. In other cases, we have been able to devise a remedy to fix a mistake that would be avoided altogether with sufficient attention to detail by legal personnel, those who support and advise the convening authority as well as those who counsel and advocate for the individual Airman on trial. *See, e.g.*, *United States v. Campbell*, No. ACM 39036, 2017 CCA LEXIS 637, at *1 (A.F. Ct. Crim. App. 26 Sep. 2017) (unpub. op.). Unfortunately for the convening authority and, more importantly, Appellant, the legal personnel involved in this case created an error of executing the sentence as adjudged. While Appellant's clemency submission indicates she did not serve the full four months of adjudged confinement, the record contains no document that proves Appellant received the benefit of the PTA and was released from confinement no later than 60 days after entering.

Secondly, the failure of the addendum to correct the erroneous statement in the clemency submission that the convening authority "could only reduce the reduction in rank" is plain error necessitating new post-trial processing. In fact, the convening authority could also affect the adjudged four months of confinement, even beyond honoring the 60-day cap of the PTA. Trial defense counsel's statement was more than an omission of confinement; it excluded confinement and thus incorrectly stated the law, i.e., Article 60, UCMJ. The SJA was obligated to note the error in the addendum and correct it. *United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2016) (unpub. op.). Such a note would likely constitute a new matter and prompt notice and an opportunity for the accused and counsel to respond. R.C.M. 1106(f)(7). Because Appellant's case is being returned for new post-trial processing, including a new SJAR, conflict-free trial defense counsel can avoid the problem altogether by not making incorrect statements of the law concerning the convening authority's clemency options.[3]

---

[3] Appellant has not claimed ineffective assistance of trial defense counsel, but we are concerned about this not uncommon scenario. An incorrect statement by trial defense counsel about the convening authority's clemency options may reflect a lack of understanding of Article 60, UCMJ, and result in inaccurate or incomplete advice to Airmen who might otherwise seek clemency. Trial defense counsel must understand Article 60, UCMJ, and advise and assist their clients accordingly. Trial defense counsel are also expected to review the SJAR and comment, as appropriate, on any matter believed to be erroneous, inadequate, or misleading pursuant to R.C.M. 1106(f).

While we are returning the case because of the problematic addendum, we are directing new post-trial processing, including a new SJAR, to maximize the opportunity for a fully corrected record. To assist with that necessary and achievable goal, we note the following:

(1) The SJAR misstated the evidence used to convict Appellant.

(2) The convening authority's action simply "approved" the sentence, which in effect approved the sentence as adjudged without implementing the PTA.

(3) The court-martial order must set forth each charge and specification and the findings or other disposition of each charge and specification. R.C.M. 1114(c)(1). When the order failed to do so in Appellant's case, it failed to capture that Appellant pleaded not guilty to Additional Charge II, Specification 3, which was withdrawn and dismissed. The particular specification also incorrectly referenced "Hydrocodone" instead of "Oxymorphone."

### III. CONCLUSION

The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing and conflict-free trial defense counsel consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e). Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court